# EXHIBIT A

VIRGINIA:

IN THE CIRCUIT COURT OF AMHERST

| | |
|---|---|
| CREMIUM, LLC,<br><br>　　Plaintiff,<br><br>v.<br><br>EASTERN SHORE FOREST PRODUCTS, INC.,<br>SERVE: Howard C. Wessels, II<br>　　　Registered Agent<br>　　　23318 Courthouse Avenue<br>　　　Accomac, VA 23301<br><br>　　Defendant. | Case No. 18000524<br><br>Filed in Clerk's Office<br>Amherst Circuit Court<br><br>APR 25 2018<br><br>Deborah Coffey Mozingo<br>*Clerk* |

## COMPLAINT

Cremium, LLC ("Cremium") files this Complaint alleging fraudulent inducement and breach of contract against Defendant Eastern Shore Forest Products, Inc. ("ESFP"), and in support, states the following:

### THE PARTIES

1. Cremium is a limited liability company organized under the laws of the Commonwealth of Virginia with its principal place of business located in Amherst, Virginia.

2. ESFP is a corporation organized under the laws of Maryland with its principal place of business located at 3667 St. Luke Road, Salisbury, Maryland 21804.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over ESFP under Va. Code Ann. § 8.01-328.1, based upon its (i) transaction of business in the Commonwealth of Virginia, and (ii) causing tortious injury by an act or omission in this Commonwealth.

4. Venue is proper in this judicial circuit under Va. Code Ann. § 8.01-262.

# COMMONWEALTH OF VIRGINIA



## SUMMONS – CIVIL ACTION
RULE 3:5; VA. CODE § 8.01-2

Case No. CL18000524-00

AMHERST COUNTY CIRCUIT COURT

411 TAYLOR STREET, AMHERST, VA 24521

ADDRESS

TO:

EASTERN SHORE FOREST PRODUCTS INC.

SERVE: HOWARD C WESSELS, II,

REGISTERED AGENT

23318 COURTHOUSE AVE ACCOMAC, VA 23301

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia.

APRIL 25, 2018           DEBORAH COFFEY MOZINGO           Clerk
DATE

by _____
         DEPUTY CLERK

Instructions: _____
_____
_____

Hearing Official: _____

FORM CC-1400 MASTER 10/13

**VIRGINIA:**

### IN THE CIRCUIT COURT OF AMHERST

| | |
|---|---|
| CREMIUM, LLC, ) | |
|     Plaintiff, ) | |
| v. ) | Case No. 18000524 |
| EASTERN SHORE FOREST PRODUCTS, INC., ) | |
| SERVE: Howard C. Wessels, II ) | Filed in Clerk's Office |
|     Registered Agent ) | Amherst Circuit Court |
|     23318 Courthouse Avenue ) | APR 25 2018 |
|     Accomac, VA 23301 ) | Deborah Coffey Mozingo |
|     Defendant. ) | *Clerk* |

### COMPLAINT

Cremium, LLC ("Cremium") files this Complaint alleging fraudulent inducement and breach of contract against Defendant Eastern Shore Forest Products, Inc. ("ESFP"), and in support, states the following:

### THE PARTIES

1. Cremium is a limited liability company organized under the laws of the Commonwealth of Virginia with its principal place of business located in Amherst, Virginia.

2. ESFP is a corporation organized under the laws of Maryland with its principal place of business located at 3667 St. Luke Road, Salisbury, Maryland 21804.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over ESFP under Va. Code Ann. § 8.01-328.1, based upon its (i) transaction of business in the Commonwealth of Virginia, and (ii) causing tortious injury by an act or omission in this Commonwealth.

4. Venue is proper in this judicial circuit under Va. Code Ann. § 8.01-262.

## STATEMENT OF FACTS

5. At the time of all facts stated herein, Cremium was a leading provider of USDA Certified packaged firewood and seasoned bulk firewood in the Eastern United States.

6. On or about January 16, 2018, the parties entered into a binding Commitment Letter (the "Agreement") in which Cremium agreed to produce and sell packaged commercial firewood (the "Product") to ESFP and ESFP agreed to buy the Product produced by Cremium pursuant to the terms of the Agreement. A true and accurate copy of the Agreement is attached hereto at Exhibit 1.

7. Prior to the execution of the Agreement, Cremium had a long-standing business relationship with Custis Farms, Inc. ("Custis Farms"). On October 16, 2016, Cremium and Custis Farms executed that certain Services Agreement effective June 1, 2016, under which Custis Farms agreed to sell Cremium's bundled firewood products to retailers at the price outlined in the Services Agreement. Through July 31, 2017, Cremium shipped 642 pallets to Custis Farms with zero returns.

8. In fact, on December 9, 2016, Phillip Custis, the President of Custis Farms, executed the letter attached hereto at Exhibit 2 attesting to the high quality of firewood produced by Cremium and stating that he has had no issues with any of his customers because of the quality of the package or wood.

9. In or around 2017, ESFP acquired Custis Farms, and thereafter, continued to sell firewood to retailers under the Custis Farms and/or ESFP brand.

10. Since 2016, Cremium has shipped a total of 1,130 pallets (84,750 bundles) of firewood under the Custis/ESFP brand.

11. In addition to shipments made under the Custis/ESFP brand, Cremium shipped firewood through another company, RMS. Beginning in mid-September 2017 and continuing until the execution of the Agreement with ESFP, Cremium shipped 79 loads for RMS to Lowe's, Kroger, Harris Teeter, and Tractor Supply.

12. Prior to the execution of the Agreement, ESFP informed Cremium on many occasions that ESFP considered RMS its top competitor.

13. As early as Spring 2017, ESFP met with RMS and falsely informed RMS that ESFP had an exclusive contract with Cremium while Cremium was negotiating with RMS to supply RMS with firewood for the 2017-2018 season. ESFP purposefully and maliciously interfered with Cremium's negotiations with RMS.

14. It was ESFP's intention to prevent Cremium from supplying firewood to RMS during the 2017-2018 firewood season.

15. In early January 2018, Phillip Custis contacted Cremium requesting Cremium to assist ESFP with providing firewood to keep up with high customer demand due to the impending bad weather.

16. Cremium informed ESFP that it was unable to assist because Cremium was committed to RMS.

17. On or about January 15, 2018, Mr. Custis asked Cremium what it would take to move production exclusively to ESFP for the remainder of the season because (i) of the ESFP customer demand, but also, and more importantly, (ii) to prevent Cremium from selling to RMS so that ESFP could steal business from RMS in the future.

18. Cremium informed ESFP that if it supplied firewood exclusively to ESFP, (1) Cremium would irreparably harm its business relationship with RMS, and (2) that Cremium could not take that risk.

19. Mr. Custis then asked Cremium what type of commitment Cremium needed, and Cremium replied to Mr. Custis and proposed that (i) ESFP commit to Cremium's full production through mid-March at a $0.45/bundle premium over RMS and (2) ESFP must take delivery of each weeks production by no later than Friday of each week.

20. ESFP quickly agreed to the terms.

21. Cremium drafted the Agreement based on ESFP's wishes and representations.

22. However, ESFP proposed the following additional language that was not part of the Agreement, proposing quality provisions that were well-above USDA requirements and industry standards:

> Cremium commits to producing and making available 7,200 bundles per week for the 4 week period reference herein. Each bundle will contain no less than .75 cubic feet of firewood and will have an average moisture content not to exceed 10%.
>
> If Cremium fails to meet its supply commitment of 7,200 bundles per week by more than 10% or fails to pack wood with at least 0.75 cubic feet or Minimum of 10% moisture content then Eastern Shore Forest Products will have the right to seek wood from other sources and at ESFP's sole discretion may declare the agreement void and owe no further duty to Cremium beyond paying for wood already shipped.

23. Cremium rejected ESFP's proposed quality provisions, and on or about January 16, 2018, ESFP signed the Agreement attached at Exhibit 1 without the proposed quality provisions.

24. The Agreement provides that:

> [ESFP] commits to purchasing and taking delivery from [Cremium] of a minimum of 7,200 bundles per week for the period of the week ending January 20, 2018 through the week ending March 17, 2018, [calculated as four (4) orders of twenty-four (24) pallets of seventy-five (75) bundles weekly]. This represents a total commitment of 64,800 bundles during the nine (9) week commitment period.

4

25. The Agreement also provides that "ESFP agrees to pay [Cremium] at a rate of $3.15 per bundle," and "ESFP will remit payment to [Cremium] within thirty (30) days after shipment from [Cremium's] location."

26. Cremium notified ESFP that, to meet ESFP's demand, Cremium would shorten its drying time of the Product to maximize production and help ESFP keep up with demand, but Cremium's drying time still far exceeded USDA requirements. ESFP, through Mr. Custis, acknowledged that it was customary in the industry to shorten drying cycles to meet demand as long as USDA temperature standards were satisfied. Cremium exceeded USDA temperature standards in drying the Product.

27. Cremium further informed ESFP that as the season ended, Cremium would return to a voluntary 72-hour drying cycle.

28. ESFP accepted Cremium's proposed drying process and drying time.

29. In February 2018, due to the warm weather, demand for the Product decreased.

30. ESFP stopped taking delivery of the Product and stopped paying for the Product as required by the Agreement.

31. Cremium notified ESFP of its breach and ESFP told Cremium that ESFP was trying to determine how to store excess wood. ESFP knew that Cremium did not have the warehouse space to store the wood given that Cremium insisted that ESFP take delivery of the Product by no later than the end of each week. Mr. Custis thereafter requested Cremium to go to a 72-hour drying cycle. At that time, Cremium agreed to switch to the 72-hour drying cycle for future Product as requested by ESFP.

32. On or about February 4, 2018, Tom Johnson and Mr. Custis, officers and agents of ESFP, visited the Cremium plant and for the first time expressed dissatisfaction with the Product. Specifically, ESFP complained about the moisture content of the Product and the

consistency of the bundle size; however, moisture content (i) was not part of the Agreement, (ii) is not a USDA requirement, or (iii) is not an industry norm. Cremium informed ESFP that Cremium would break down any pallets with which ESFP were not satisfied. However, ESFP informed Cremium that it was not necessary and that ESFP could sell the Product to its customers.

33. On or about February 16, 2018, ESFP informed Cremium that 12 pallets that had been delivered weeks earlier were being returned because of reported mold.

34. Cremium offered to inspect the 12 pallets and to replace them at its own expense, but ESFP refused to allow Cremium to inspect or replace the pallets. ESFP also refused to return the 12 pallets to Cremium's facility for inspection.

35. ESFP has refused to continue to purchase the Product in accordance with the terms of the Agreement

## COUNT I
## (FRAUDULENT INDUCEMENT)

36. Cremium restates and incorporates by reference paragraphs 1 through 34 of this Complaint as if fully set forth herein.

37. In January 2018, ESFP intentionally misrepresented that they would purchase and take delivery from Cremium a minimum of 7,200 bundles of product per week for the period of the week ending January 20, 2018, through the week ending March 17, 2018. These representations were prior to and/or separate from ESFP's contractual obligations, and were intended to induce Cremium to sign the Agreement and stop selling Product to RMS.

38. ESFP never intended to purchase the Product under the terms of the Agreement and had no intention at the time the Agreement was executed to take delivery of the Product after the winter season ended, regardless of the date at which winter ended.

39. ESFP's fraudulent intent not to purchase the Product from Cremium is evident from: (i) ESFP's fraudulent statements to RMS that ESFP had an exclusive contract to purchase Product for ESFP; (ii) ESFP's intent to harm and interfere with Cremium's and RMS' business relationship; (iii) ESFP's statements that RMS was its biggest competitor and ESFP's goal to steal business away from RMS, (iv) ESFP's false promise to purchase Product from Cremium at a $.45/bundle premium over what RMS was paying Cremium, (v) ESFP presenting an offer to which Cremium could not refuse; (v) ESFP's knowledge that if it failed to perform per the terms of the Agreement, Cremium would be substantially and irreparably harmed, (vi) ESFP refusing to purchase the Product after the season ended and the weather turned warmer; and (vii) within days after the season ended, ESFP made its first quality complaint.

40. Cremium was not aware that ESFP had no intent to perform the promises that were made. Rather, Cremium reasonably relied on ESFP's representations and concealment in decreasing the amount of firewood sold to RMSand agreeing to increase the sale of the Product to ESFP. ESFP's fraudulent inducement materially damaged Cremium's relationship with RMS and materially damaged Cremium's business.

41. Independent of its contractual obligations, ESFP made misrepresentations of material facts and concealed material facts with the present intention to mislead Cremium.

42. ESFP's material misrepresentations and concealment, upon which Cremium relied, proximately caused Cremium to execute the Agreement and hinder Cremium's relationship with RMS.

43. Due to ESFP's material misrepresentations and subsequent actions, effective March 1, 2018, Cremium was forced to furlough its staff and cease operations.

7

44. As a result of and proximately caused by ESFP's material misrepresentations, Cremium has suffered damages in the amount of $ $1,700,000.00, based upon lost profits and other financial loss caused by Defendant's fraud.

45. Cremium is also entitled to Three Hundred Fifty Thousand Dollars ($350,000.00) in punitive damages, plus attorneys' fees and costs pursuant to *Proposed Development Co. v. Bershader*, 258 Va. 75, 92-93, 515 S.E.2d 291, 301 (1999), and prejudgment interest.

WHEREFORE, Plaintiff Cremium, LLC prays for judgment against Defendant Eastern Shore Forest Products, Inc. in the sum of $1,700,000.00, plus punitive damages in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00), reasonable attorneys' fees and its costs expended herein, and prejudgment interest.

## COUNT II
## (BREACH OF CONTRACT)

46. Cremium restates and incorporates by reference paragraphs 1 through 44 of this Complaint as if fully set forth herein.

47. In the Agreement, ESFP agreed to purchase a minimum of 7,200 bundles per week for a period of the week ending January 20, 2018, through the week ending March 17, 2018.

48. In other words, ESFP was required to take delivery of a minimum of 4 loads (96 pallets) per week for 9 weeks totaling 36 loads (864 pallets).

49. Through February 15, 2018, ESFP took delivery of 248 pallets (18,600 bundles).

50. ESFP owes Cremium $37,588.35 for shipments made between January 16, 2018, and February 15, 2018.

51. Cremium has performed its obligations under the Agreement.

8

52. ESFP has materially breached the Agreement by (i) failing to purchase the Product per the terms of the Agreement, and (ii) failing to pay for Product delivered to ESFP.

53. As a result of ESFP's material breach, Cremium has suffered damages in the amount of $37,588.35 for Product sold and delivered to ESFP and $145,530.00, the amount due and owing under the Agreement.

WHEREFORE, Plaintiff Cremium, LLC prays for judgment against Defendant Eastern Shore Forest Products, Inc. in the sum of $183,118.35, plus reasonable attorneys' fees and its costs expended herein, and for such other relief as the Court may deem just and proper.

## COUNT III
### (QUANTUM MERUIT and UNJUST ENRICHMENT)

54. Cremium restates and incorporates by reference paragraphs 1 through 52 of this Complaint as if fully set forth herein.

55. Alternatively, by virtue of the work performed by Cremium for Defendant, Defendant received benefits for which the law implies an obligation to repay Cremium. Defendant knew that Cremium was performing work and producing Product for their benefit in exchange for prompt payment. Such work and production benefitted Defendant.

56. Defendant improperly rejected its obligations under the Agreement and received Product or refused to take possession of Product produced for Defendant as required by the Agreement and used Cremium's labor and materials to benefit themselves, including by denying supply of product to their competitors and by preventing Cremium from remaining in business to be able to supply their competitors in the future.

57. Defendant is entitled to recover from Defendant the sum of $37,588.35, plus interest, for the labor, materials, and pecuniary benefit provided to Defendant by their actions, which has unjustly enriched Defendant.

WHEREFORE, Cremium prays that this honorable Court enter judgment against Defendant in the amount of Thirty Seven Thousand Five Hundred Eighty Eight and 35/100 Dollars ($37,588.35), plus applicable interest, and award Cremium their costs in this action.

## COUNT IV
### (TORTIOUS INTERFERENCE WITH CONTRACT)

58. Cremium restates and incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

59. Prior to the Agreement between Cremium and Defendant, Cremium enjoyed a contractual relationship with RMS, a competitor of Defendant. As part of that contractual relationship, Cremium supplied RMS with Product and RMS paid Cremium for the Product.

60. Defendant ESFP was fully aware of the contractual relationship and expectancy for continued contractual relations between Cremium and RMS.

61. During negotiations between Cremium and ESFP, Defendant was made aware of the contractual relationship and expectancy of continued contractual relations between Cremium and ESFP.

62. Defendant induced breach of the contractual relationship and expectancy of continued contractual relations between Cremium and RMS by improper means, utilizing fraud and deception in the inducement. The fraud and deception include the material misrepresentations made by Defendant to induce Cremium to enter into an exclusive supply contract while concurrently terminating its relationship with RMS.

63. Defendant has been irreparably damaged, both in the lost revenue which would have been received via the continued contractual relationship with RMS and future revenues which would have been received from RMS, as well as in the lost value of the company, which has been forced to cease operation due to Defendant's refusal to honor their commitments made

before the Agreement was entered into by the parties which were relied upon in executing the Agreement.

64. Cremium is entitled to recover from Defendant the sum of $2,725,275.00, plus interest, which consists of the lost revenues which would have been collected from RMS this season, the lost revenues which would have been collected from RMS next season, and the value of the company at the time Defendant ESFP tortuously interfered with Cremium's contractual relations resulting in the closing of the company.

WHEREFORE, Cremium prays that this honorable Court enters judgment against Defendant in the amount of Two Million Seven Hundred Twenty Five Thousand Two Hundred Seventeen Dollars ($2,725,275.00), plus applicable interest, and award Cremium its costs in this action.

Dated: April 24, 2018

Respectfully submitted.

CREMIUM, LLC

By Counsel

MILES & STOCKBRIDGE P.C.

_____
Kenneth M. Misken (VSB #72207)
Craig Hoovler (VSB # 839987)
1751 Pinnacle Drive, Suite 1500
Tysons Corner, Virginia 22102
Phone: 703-903-9000
Fax: 703-610-8686
kmisken@milesstockbridge.com
*Counsel for Plaintiff Cremium, LLC*

4812-7605-0016, v. 2

11

## Commitment Letter

This Commitment Letter (the "Commitment") dated and effective January 16, 2018 is by and between Cremium, LLC, located at 894 Union Hill Road, Amherst, Virginia 24521 (hereinafter "Supplier"), and Eastern Shore Forest Products, Inc., located at 3667 St. Luke's Road, Salisbury, Maryland 21804 (hereinafter "Buyer").

Buyer commits to purchasing and taking delivery from Supplier of a minimum of 7,200 bundles per week for the period of the week ending January 20, 2018 through the week ending March 17, 2018 [calculated as four (4) orders of twenty four (24) pallets of seventy five (75) bundles weekly] This represents a total commitment of 64,800 bundles during the nine (9) week commitment period.

Buyer agrees to pay Supplier at a rate of $3.15 per bundle.

Buyer agrees that all orders will be initiated by the receipt of a valid purchase order and that Supplier will be provided with copies of all purchase orders. Buyer will remit payment to Supplier within thirty (30) days after shipment from Supplier's location.

Buyer agrees to provide shipping of each of the orders from Supplier's location in Amherst, Virginia.

Supplier agrees to make every effort to acquire the materials necessary, including logs, to produce the desired quantities and to meet Buyer's shipping schedule and will further commit to producing the quantity called for in the Commitment above all else as it relates to other potential customers.

SUPPLIER: _____   BUYER: _____

Brian McIntee                        ~~Phil Custis~~ Tom Johnson
Cremium, LLC                         Eastern Shore Forest Products, Inc.

1





6056 Seaside Road
P.O. Box 237
Nassawadox, Virginia 23413

Phone 757-442-4121
        757-442-9071
Fax    757-442-7052

12/9/2016

To whom it may concern,

    I, Phillip Custis, have been packaging and selling firewood for over thirty years. During this past year, I have also been selling Cremium's bundled firewood and have been very pleased with the product they have been producing for my company. I have had no issues with any of my customers because of the quality of the package or wood.

    If you have any questions, you may contact me at my office at 757-442-4121.

Signed,

*Phillip R Custis*

Phillip R Custis
President
Custis Farms, Inc.

**EXHIBIT 2**