CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/09/2018
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

CREMIUM, LLC,

     *Plaintiff*,

v.

EASTERN SHORE FOREST PRODUCTS, INC.,

     *Defendant.*

CASE NO. 6:18–cv–00063

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

  This case concerns wood. Cremium, LLC sold it. Defendant Eastern Shore Forest Products, Inc. ("Eastern Shore") buys it. Eastern Shore, during peak demand for firewood in the winter of 2017–18, convinced Cremium to switch from supplying Eastern Shore's top competitor to supplying Eastern Shore. But when the weather turned unexpectedly warm, Eastern Shore allegedly balked at its purchase commitments to Cremium. Consequently, Cremium filed this lawsuit for fraudulent inducement, breach of contract, *quantum meruit*, and tortious interference with contract. Eastern Shore has moved to dismiss all but the breach of contract claim, and the parties have submitted the motion on the briefs. The motion will be granted.

**STANDARD OF REVIEW**

  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A court does not "accept the legal conclusions drawn from the facts." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005).

**FACTS AS ALLEGED**

Cremium produced packaged firewood and bulk firewood in the eastern United States. (Complaint ¶ 1). It had a long-standing business relationship with Custis Farms, Inc. (*Id*. ¶ 7). For instance, during 2016 and 2017, Cremium supplied Custis Farms with 642 pallets of firewood, with which Custis Farms was "very pleased," according to a letter from its president. (*Id*. ¶ 7). In 2017, defendant Eastern Shore acquired Custis Farms and continued selling firewood under its own brand, Custis Farms' brand, or both. (*Id*. ¶ 9).

Cremium also supplied firewood through a third-party company called RMS. (Complaint ¶ 11). Eastern Shore communicated to Cremium that Eastern Shore viewed RMS as its top competitor. (*Id*. ¶ 12). In spring 2017, while Cremium and RMS were in business negotiations for the 2017–18 season, Eastern Shore allegedly falsely informed RMS that Eastern Shore had an exclusive contract with Cremium, for the purpose of interfering with the Cremium-RMS negotiations. (*Id*. ¶¶ 12–13).

In early January 2018, the president of Custis asked Cremium to help Eastern Shore provide firewood to meet customer demand for the ongoing severe winter. (Complaint ¶15). Cremium declined because of its commitments to RMS. (*Id*. ¶16). The president pressed further, asking what it would take for Cremium to exclusively supply to Eastern Shore, thus both helping Eastern Shore and harming its competitor, RMS, in the future. (*Id*. ¶17). Cremium again declined the overtures because it was unwilling to damage its relationship with RMS. (*Id*.

¶ 18).

The president of Custis remained persistent. Eventually, Cremium relayed that it would be willing to supply Eastern Shore if Eastern Shore committed to (A) buying Cremium's full production through mid-March 2018 at $0.45/bundle over what RMS paid and (B) picking up Cremium's firewood by Friday every week. (*Id*. ¶ 19). The parties agreed to terms as represented in a short commitment letter dated for January 16, 2018.

Under the contract, Eastern Shore committed to buying 7,200 bundles of firewood per week between January 20 and March 17, 2018. (Dkt. 1-1). The price was $3.15 per bundle. Quality control provisions were not included in the contract. (Complaint ¶¶ 22–23). Cremium allegedly notified Eastern Shore that, to meet the demand, it would have to shorten its drying time for the wood, although USDA standards would still be met. (*Id*. ¶ 26). Eastern Shore allegedly accepted Cremium's proposed drying time and drying process. (*Id*. ¶ 28).

The weather became unseasonably warm in February 2018. (Complaint ¶ 29). Demand for firewood therefore dropped off. Eastern Shore stopped taking delivery of Cremium's firewood and stopped paying Cremium. (*Id*. ¶ 30). Cremium notified Eastern Shore of its breach, and Eastern Shore allegedly knew the failure to timely pick up the firewood caused Cremium to run out of warehouse space. (*Id*. ¶ 31). The president of Custis nonetheless asked Cremium to return to the standard, longer drying cycle, and Cremium agreed to do so for future product. (*Id*. ¶ 31).

On February 4, 2018, two men (including the president of Custis) who were "officers and agents" of Eastern Shore, visited Cremium's plant and "for the first time expressed dissatisfaction with the" firewood, specifically the moisture content and consistency of the bundle size. (Complaint ¶¶ 32–33). Cremium alleges that moisture content was not part of the

contract, not a USDA requirement, and not an industry norm. (*Id*. ¶ 32). Cremium also offered to "break down" any pallets with which Eastern Shore was dissatisfied, but Eastern Shore replied that was not necessary. (*Id*.).

About February 16, 2018, Eastern Shore informed Cremium that 12 previously-delivered pallets were being returned because of mold. (Complaint ¶ 33). Cremium offered to inspect and replace the pallets, but Eastern Shore declined and refused to return the pallets to Cremium's facility for inspection. (*Id*. ¶ 34). Eastern Shore has refused to continue to purchase firewood as required under the agreement. Based on these facts, Cremium advances four claims.

First, in a fraudulent inducement claim, Cremium contends Eastern Shore purposely induced Cremium to enter into the agreement, with no intent to perform, in order to harm Eastern Shore's competitor, RMS. (Complaint ¶¶ 37–38). The inducement allegedly forced Cremium to furlough staff and cease operations, thus causing $1,700,000 in damages and lost profits. Cremium also seeks $350,000 in punitive damages.

Second, Cremium advances a breach of contract claim based on the failure to take possession of and pay for the firewood. Cremium contends it is owed over $37,000 for product Eastern Shore took possession of and over $145,000 for "the amount due and owing under the Agreement." (Complaint ¶ 53).

Third, Cremium asserts a *quantum meruit*/unjust enrichment claim worth over $37,000 for the delivered product.

Fourth and finally, Cremium asserts a tortious interference with contract claim. Specifically, Cremium says Eastern Shore induced it to breach its contract with RMS by using fraud and deception to convince Cremium to end its relationship with RMS. Cremium asserts it is entitled to over $2.7 million in lost revenue and future profits it would have received from

RMS, as well as lost value in the company.

## ANALYSIS[1]

### I.  Fraud in the Inducement

Eastern Shore lodged several arguments against Cremium's fraudulent inducement claim. (Dkt. 16 at 6–15).  Cremium failed to respond to two of those arguments:  (1) that the claim was not pled with the requisite particularity under Fed. R. Civ. P. 9(b), and (2) that Cremium did not properly allege damages from the supposed fraud.  (*See* dkt. 18 at 7–11).  Accordingly, Cremium concedes Eastern Shore's points, and the claim will be dismissed.  *See Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) (ignoring opponent's argument is "an outright failure to join in the adversarial process [that] ordinarily result[s] in waiver"); *Turner v. Va. Dep't of Med. Assistance Servs.*, 230 F. Supp. 3d 498, 509 (W.D. Va. 2017); *Oliver v. Baity*, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) (A "party's failure to address an issue in its opposition brief concedes the issue."); *Brand v. N.C. Dep't of Crime Control & Pub. Safety*, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004).

### II.  *Quantum Meruit*

As Eastern Shore observes, a *quantum meruit* claim does not exist when there is an express contract.  *Mongold v. Woods*, 278 Va. 196, 204 (Va. 2009); *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 491 (4th Cir. 1992); *Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 707 (E.D. Va. 2006).  The parties do not dispute that such a contract exists.  Indeed, it was attached to the Complaint.  The *quantum meruit* claim therefore fails.  To avoid this result, Cremium briefly argues that the basis of its *quantum meruit* claim is

---

[1]  The parties proceed on the theory that Virginia substantive law applies to this case, so the Court—currently finding no basis to conclude otherwise—will do the same.

Eastern Shore benefiting "by its actions in getting Cremium to terminate its relationship with RMS and by Cremium going out of business." (Dkt. 18 at 11). But those are not benefits that Cremium *conferred upon* Eastern Shore and that Eastern Shore *wrongfully retained* without payment, as needed for a *quantum meruit* claim. *Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 707 (E.D. Va. 2006). Instead, they are ancillary effects from (1) Cremium's decision to enter into a contract with Eastern Shore, and (2) Eastern Shore's alleged breach.[2]

### III. Tortious Interference with Contract

The tortious interference claim also comes up short. Cremium did not respond to Eastern Shore's argument that the complaint failed to specifically identify a contractual relationship or business expectancy with RMS.[3] Hence, the claim will be dismissed. *See Alvarez*, 828 F.3d at 295; *Turner*, 230 F. Supp. 3d at 509; *Oliver v. Baity*, 208 F. Supp. 3d at 690; *Brand*, 352 F. Supp. 2d at 618. The claim fails for another reason. The only basis advanced by Cremium to satisfy the "improper method" element was the alleged fraud perpetrated by Eastern Shore. But as discussed above, the fraud theory in this case does not survive, in turn undercutting the tortious interference claim.

### IV. Attorneys' Fees

Eastern Shore argues, and Cremium does not contest, that attorneys' fees are unavailable in this case because the contract has no fee shifting provision. That relief will therefore be stricken.

---

[2] Cremium's new theory is also procedurally defective. It is betrayed by the plain face of the complaint, which based the *quantum meruit* claim on Eastern Shore's refusal to follow through on its commitment, per the contract, to buy firewood from Cremium.

[3] The elements of a tortious interference claim are (1) a valid contract or business expectancy, (2) knowledge thereof by the interferor, (3) intentional interference using improper methods, (4) causing an end of the relationship, (5) and damages. *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 216 (Va. 2014).

\* \* \*

The motion to dismiss will be granted. An appropriate order will issue. The Clerk of Court is requested to send a copy of this Opinion and the accompanying Order to the parties.

Entered this 9th day of November, 2018.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE